## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Sarah Marsden,

               Plaintiff,

     v.

Kishwaukee Community College,
Laurie Borowicz, Cindy McCluskey,
and Dave Dammon,

               Defendants.

Case No. 3:19-cv-50334

Honorable Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

Plaintiff Sarah Marsden ("Marsden") was a faculty counselor at Kishwaukee Community College ("the College" or "College") for six years. Because she believed that the College's administration was wasting taxpayer dollars, she allegedly spoke out at Union meetings, spoke privately with union leadership, and filed at least one Freedom of Information Act ("FOIA") request, in which she attempted to gain information from the College related to its financial expenditures. After allegedly being forced to resign and accept a lesser role, Marsden filed this action alleging First Amendment retaliation, defamation, false light invasion of privacy, infliction of emotional distress, and negligent infliction of emotional distress against the College, College President Laurie Borowicz, College Executive Director of Human Resources Cindy McCluskey, and College President Borowicz's Assistant Dave Dammon (collectively "the Defendants"). Dkt. 49, ¶¶ 5-8.

On February 3, 2021, this Court dismissed Marsden's amended complaint because she failed to properly allege the protected speech that she engaged in. Dkt. 48. After Marsden filed her Second Amended Complaint, the Defendants filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants the motion in part and denies the motion in part.

## I.    FACTUAL ALLEGATIONS

Marsden worked at the College as a faculty counselor from June 2013 until June 25, 2019.[1] Dkt. 49, ¶ 9. Starting in January 2018, she began speaking out about what she saw as wasteful spending on the part of the College's administration. *Id.* ¶ 10. In February 2018, she met with the Union's President and Negotiator inside his campus office and expressed her concerns regarding potential corruption by the College administration staff, including President Borowicz. Marsden told the Union President that he should stand up to Borowicz and protect taxpayer dollars and the reputation of the College. *Id.* ¶ 11(a).

That same day, Marsden filed a FOIA request in which she asked for copies of all employee survey comments in 2011, 2013, and 2017. The request was later denied.[2] *Id.* ¶ 11(b). Later that month, Marsden expressed her concerns at an on-campus Union meeting. Defendant Dave Dammon, President Borowicz's assistant, attended that meeting, as did other faculty. *Id.* ¶ 11(c). At the meeting, Marsden expressed her concerns about misuse of public funding in relation to "unnecessary and expensive renovation and landscaping at the College." *Id.*

---

[1] All of the factual allegations are taken from the Second Amended Complaint. Dkt. 49.
[2] Marsden also filed an affidavit supporting the Union's appeal of this denial. *Id.* ¶ 11(g).

On July 18, 2018, Marsden met with the Union President and two other Union members and expressed her belief that the College had improperly withheld financial and survey records despite her requests for that information. *Id.* ¶ 11(d). Six days later, Marsden again met with the Union President and other Union members to express her concerns about the College's use of taxpayer funds "to remodel the President's Office Suite and Gaming Room and [for] an additional $232,459.00 in painting expenditures." *Id.* ¶ 11(e).

On August 21, 2018, Marsden again raised her concerns at a Union meeting attended by Dammon and other faculty members. This time, her concerns focused on a $40,000 emergency landscaping expenditure that was approved by the Board, a College Wine Walk event, and a horticultural flowerbed fundraising event.[3] *Id.* ¶ 11(f). Around that time, there was also an anonymous FOIA request to the College. Marsden alleges that the College believed she had submitted the request, that the FOIA request upset the College administration, and that the Defendants believed Marsden might disclose any information to the College's Board of Directors, state officials, or the public. *Id.* ¶ 14. As a result, Marsden alleges that the Defendants then subjected her to "a pattern of retaliation and harassment" that included placing her on a "target list." *Id.* ¶ 17.

---

[3] Marsden also alleges that at other faculty and administration meetings, she spoke up about alleged discrimination against a disabled professor, though she does not state what that discrimination was other than that the professor worked ten-hour days and operated a scooter to get around campus. Dkt. 49, ¶ 11(g). Her concern appeared to be that the College was "misusing" public funds on various renovations and activities when they should have been trying to accommodate the allegedly disabled professor. *Id.* But Marsden has not alleged any claims of discrimination, disability or otherwise.

3

In mid-June of 2019, an anonymous, threatening, harassing letter was sent to the home of College President Borowicz. *Id.* ¶ 18. College Campus Police determined that the letter was not a "criminal matter" and did not "constitute harassment" and they closed the case, notifying College administrators, including President Borowicz. *Id.* ¶ 20. On about June 20, 2019, President Borowicz reported to the campus police and the college at large that Marsden had sent a threatening and harassing anonymous letter to her home address. *Id.* ¶ 20. Further, President Borowicz asked her assistant Dammon, who is also a Belvidere Police Officer, to begin an investigation of Marsden. *Id.* ¶ 21.

As part of this independent investigation, Dammon searched and took photos of Marsden's personal belongings, including confidential records, student and patient files, and patient mental health information. *Id.* ¶ 22. Additionally, Dammon asked the DeKalb County Sheriff's Department to have Marsden investigated on behalf of President Borowicz. *Id.* He provided them with the photos and notes from Marsden's office and "requested that they procure a confession" from Marsden. *Id.* ¶ 23. The following day, Detective Holiday and Deputy Johnson from the DeKalb County Sheriff's Office appeared on campus and interrogated Marsden, escorting her publicly in front of College students and staff. *Id.* ¶¶ 24-25. Detective Holiday explained that Borowicz had accused Marsden of committing criminal activity by mailing the anonymous letter. *Id.* ¶ 26. Marsden alleges she was "restrained" by Detective Holiday from leaving the office and that she was not permitted to contact an attorney or a Union representative. *Id.* ¶ 27. After

4

additional questioning, Detective Holiday informed her that the College's Human Resources would make a decision about the status of her employment, and that the case was being referred to the State's Attorney's Office for criminal prosecution. *Id.* ¶ 32.

When Marsden returned to her office, she was followed by Deputy Johnson, who explained that he was escorting her off campus and allowing her to get her things first. *Id.* ¶¶ 35-36. Deputy Johnson then escorted her from her office during school hours while students and staff were present. *Id.* ¶ 37.  In the presence of Dammon and the Union President Ellis, McCluskey gave Marsden a letter stating she was placed on administrative leave immediately because of the pending investigation. *Id.* ¶ 39. Again, Marsden denied sending the anonymous letter. *Id.* ¶ 40. President Borowicz maintained that Marsden had committed a crime by sending the anonymous, threatening letter and also alleged that Marsden used a fake name and email to fill out numerous FOIA requests that the College recently received. *Id.* ¶ 42.

After the investigation was closed and Marsden was cleared of the criminal allegations, McCluskey sent a letter to Marsden, which McCluskey then published to College faculty and staff, stating that the complaint against Marsden was "not substantiated," that "there [was] not sufficient evidence" to sustain the alleged conduct, and reminding her of various College policies. *Id.* ¶¶ 46-47. Marsden alleges that she was forced to resign her teaching position at the College as part of the faculty and assume a new "counseling role" at the College. *Id.* ¶ 48.

5

## II.    ANALYSIS

Under Rule 8, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." [4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must give to the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. It must also plausibly suggest that the plaintiff is entitled to relief, which "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Further, the federal pleading standard does not require the plaintiff to satisfy every element; plaintiff need only plead enough facts to elevate his claim from speculative to plausible. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory.").

---

[4] Defendants' motion to dismiss claims to be made under Fed. R. Civ. P. 12(b)(6) and 12(c). Because no answer has been filed, Rule 12(c) is not applicable. Regardless, the Court analyzes both under the same standard. *See Vinson v. Vermilion Cty.*, 776 F.3d 924, 928 (7th Cir. 2015) ("A dismissal under Rule 12(b)(6) and judgment on the pleadings under Rule 12(c) both employ the same standard: the complaint must state a claim that is plausible on its face.") (citations omitted); *see also Twombly*, 550 U.S. at 570.

The burden of persuasion on a motion to dismiss rests with the defendant, not the plaintiff. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court."). Thus, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's allegations, and when evaluating a 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020).

\* \* \*

As a preliminary matter, Plaintiff asserts the jurisdiction of this court under 28 U.S.C. § 1331 and § 1332, but continues to allege that she and all defendants are citizens of Illinois. Dkt. 49, ¶¶ 2, 4-8. Jurisdiction under § 1332 is only proper when diversity of citizenship of the parties exist. That is not the case here. Therefore, because this case is here on federal question, if the constitutional claim (Count I) is dismissed, the Court may decline to extend jurisdiction over the other seven related state law claims. Currently, a viable federal claim exists, so the Court maintains jurisdiction.

## A. Count I: 42 U.S.C. § 1983 – First Amendment Retaliation

Defendants move to dismiss Marsden's claim of First Amendment Retaliation for the following reasons: (1) Marsden failed to plead facts demonstrating she spoke on a matter of public concern and that Defendants were motivated by it; (2) Marsden failed to establish that the alleged violation was caused by an express

7

policy, widespread practice, or by a person with final policy-making authority; and (3) that the individual defendants Borowicz, McCluskey, and Dammon are entitled to qualified immunity.

## 1. Failure to State a Claim of Retaliation

Although plaintiff need not plead each element to defeat a motion to dismiss, it is helpful to keep them in mind. To succeed on a claim for retaliation based on the First Amendment, a plaintiff must establish that: (1) she "engaged in constitutionally protected speech," (2) she "suffered a deprivation likely to deter protected speech," and (3) her "protected speech was a motivating factor in the deprivation and ultimately, if the [defendant] cannot show it would have inflicted the deprivation anyway, its but-for cause." *Harnishfeger v. United States*, 943 F.3d 1105, 1112-13 (7th Cir. 2019). This analysis is proper when a plaintiff who is a public employee speaks "as a citizen upon matters of public concern" and not merely "as an employee upon matters only of personal interest." *Connick v. Myers*, 461 U.S. 138, 147 (1983); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (creating a framework for public employee speech that "first requires determining whether the employee spoke as a citizen on a matter of public concern" and then "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public"); *Pickering v. Board of Educ.*, 391 U.S. 563, 572 (1968) ("it is essential that [public school teachers] be able to speak out freely . . . without fear of retaliatory dismissal").

An action is adverse for the purposes of First Amendment retaliation if it is "likely [to] deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). The adverse action need not independently violate the Constitution. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("Conduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive."). The third element requires a plaintiff to show "that the *fact* of the plaintiff's engagement in protected activity was a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's [conduct] motivated a response that the plaintiff did not particularly like." *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020).

Defendants argue that Marsden has not alleged that she spoke on a matter of public concern because a FOIA request "cannot rise to the level of speech on a matter of public concern" under the standard in *Connick*. Dkt. 55, at 13. A FOIA request, Defendants argue, "is nothing more than a request for access" and therefore is not "speech on a matter of public concern." *Id.* But Defendants ignore the other allegations of protected speech, such as telling the Union President of her concerns about corruption and misuse of taxpayer funds, ¶ 11(a); speaking at a Union meeting about the College's misusing public taxpayer funds for unnecessary and expensive renovation and landscaping, ¶ 11(c); telling Union members that the College was intentionally holding back financial records related to the campus expenditures, ¶ 11(d); speaking at a Union meeting about the College's misusing

9

public taxpayer funds to remodel the President's Office Suite and Gaming Room, ¶ 11(e); speaking at a Union meeting about the College's misusing public taxpayer funds regarding emergency landscaping, a College Wine Walk event, and a Horticultural Flowerbed Fundraising event, ¶ 11(f); and speaking at faculty meetings about the College's misusing taxpayer dollars on unnecessary expenditures and its discrimination of a disabled female professor, ¶ 11(g). Dkt. 49, ¶ 11. Indeed, although Mardsen references the FOIA request throughout the Second Amended Complaint, it is littered with similar allegations of being retaliated against for publicly criticizing the College's misuse of public funds. Dkt. 49, ¶¶ 15, 43, 63, 65.[5]

Not only do Defendants ignore the multiple instances of alleged protected speech, but they also rely on case law that is easily distinguishable. For example, in *Houchins v. KQED, Inc.*, the Supreme Court held that the public and the media had no First Amendment right of access to jails. 438 U.S. 1, 7-8 (1978) (rejecting the argument that the right to gather news and to receive information implied a special right of access to government-controlled sources of information). Here, Marsden is not challenging her right to information from the College—nor is she challenging the denial of her FOIA request, though she does allege it was "improperly" denied. Marsden is alleging that her speech and conduct in requesting the information itself is protected. *Houchins* does not touch this issue and is thus distinguishable.

---

[5] Marsden's allegations of filing of a FOIA request and signing an affidavit in support of the Union's appeal of a denied FOIA request appear in her complaint at ¶ 11(b) and ¶ 11(h).

Similarly, in *Travis v. Reno*, the Seventh Circuit rejected arguments that the Driver's Privacy Protection Act (18 U.S.C. § 2271-25) was an unconstitutional exercise of Congress' commerce power because it violated the anti-commandeering clause of the Tenth Amendment. 163 F.3d 1000, 1001 (7th Cir. 1998) (holding that the Act does not violate the First Amendment on its face). Again, Defendants conflate the right to access information with the right to speak freely. *Travis* concerns right of access to information. Marsden is not challenging the denial of her FOIA request, but rather stating that her speech in requesting the information was itself protected and the motivating factor for the College's actions.

In *McBurney v. Young*, the Supreme Court held that Virginia's Freedom of Information Act, which only granted requests made by citizens of Virginia, did not violate the Privileges and Immunities Clause. 569 U.S. 221, 232 (2013) (upholding Virginia's FOIA because the right to obtain information is not without limit). Again, *McBurney* is distinguishable from the present facts. Marsden is not arguing that she has a First Amendment right to information from the College; rather, she alleges that her request itself, along with her other occasions to speak regarding the College's use of taxpayer funds, is protected by the First Amendment. This Court is not persuaded by Defendants' argument.

In *Campbell v. Towse*, the Seventh Circuit applied the *Pickering-Connick* analysis to a police officer's complaint about the efficacy of a police program. 99 F.3d 820, 826 (7th Cir. 1996). The *Campbell* court settled the threshold inquiry— whether the officer's speech addressed a matter of public concern, focusing on its

11

"content, form and context"—in favor of the officer, but on balance, found that the police department's interests outweighed the officer's interest in expressing his views. *Id.* at 827-29 (quoting *Connick*, 461 U.S. at 147-48). Defendants argue that under this analysis, Marsden's allegations fail because she did not provide content or context for the FOIA affidavit. But Marsden did. She alleged that the affidavit was in support of the Union's appeal of the FOIA request she submitted for employee survey comments from 2011, 2013, and 2017, which were later made public by President Borowicz during a public briefing. Dkt. 49, ¶¶ 11(h), 11(b). And again, Mardsen's complaint alleges much more than the FOIA request.

Further, Defendants neglect to address whether Marsden was speaking as a public employee or private citizen, instead contending that Marsden's complaint lacks context and information needed to determine whether the FOIA request and affidavit signature "rises to a level of public concern." Dkt. 55, at 13-14. Defendants have failed to develop these issues, and thus they are forfeited. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments that are unsupported by pertinent authority are waived (even where those arguments raise constitutional issues)"). The Court is satisfied that Marsden's alleged public criticism of the College's spending practices plausibly alleges speech protected by the First Amendment.

Next, Defendants argue that Marsden failed to plead facts that Defendants were motivated by her speech. Defendants argue that "[t]o establish motivation, plaintiff must show that the person who allegedly retaliated against her knew of the

protected conduct." Dkt. 55, at 14 (citing *Samuelson v. LaPorte Comm. Sch. Corp.*, 526 F.3d 1046, 1054 (7th Cir. 2008)). But on a motion to dismiss, a plaintiff need not allege each element. *See Bennett*, 153 F.3d at 518. As Defendants acknowledge, Marsden alleges that Dammon was present for some of the meetings where Marsden spoke against the College's expenditures. *See, e.g.,* Dkt. 49, ¶¶ 11(c), 11(f), 11(g). Defendants argue that although Marsden pleaded "Dammon attended the meetings, no facts are pled which demonstrate that Dammon would have actually heard the alleged statements." Dkt. 55, at 15. But here, Defendants mistakenly rely on *Samuelson*'s requirement that a plaintiff show actual knowledge. *Samuelson* was decided on a motion for summary judgment, with the aid of discovery. The court cannot require a plaintiff to meet this high burden on a motion to dismiss.

Defendants' argument against motive by temporal proximity similarly fails. Citing to *Mullin v. Gettinger*, Defendants argue that the ten months' time between the last alleged instance of protected speech (August 2018) and the retaliatory conduct (June 2019) is too long for it to be a motivating factor. 450 F.3d 280, 285 (7th Cir. 2006). But *Mullin* was decided on a motion for a new trial, after a jury decided the case. Similarly, *Kidwell v. Eisenhauer*, was decided on a motion for summary judgment. 679 F.3d 957, 969 (7th Cir. 2012). Defendants argue that Marsden "failed to establish that the defendants had the requisite awareness" and "has failed to plead facts establishing a prima facie case of retaliation," but those are clearly standards under Rule 56, not Rule 12.[6] Dkt. 55, at 16.

---

[6] The Court urges litigants to rely on cases that were decided in the same procedural posture. In memoranda supporting or opposing a motion to dismiss, cases that were decided

On a motion to dismiss, a plaintiff need only allege a plausible claim. Marsden has alleged that she voiced concerns about the College's use of taxpayer funds as a private citizen and that the College placed her on a target list and forced her to take a non-faculty position in retaliation for her speech. The Court is satisfied that she has plausibly alleged retaliation under the First Amendment.

### 2. Failure to Plead a *Monell* Claim against the College

Defendants further argue that the First Amendment Retaliation claim against the College should be dismissed because Marsden has not sufficiently pleaded a *Monell* claim. To sufficiently state a cause of action against the College, Marsden "must allege facts which, if true, would show that the governmental entity deprived [her] of a constitutionally protected right, and that the deprivation was caused by a municipal policy or custom." *Leahy v. Board of Trs.*, 912 F.2d 917, 922 (7th Cir. 1990) (citing *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978)). A governmental entity "can be held liable for a constitutional violation only if the violation resulted from a formal policy, and informal custom, or a decision 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent

---

on summary judgment (or on appeal of summary judgment) are only moderately helpful because of the differing standards. *See, e.g., Winchester v. Ryder Integrated Logistics, Inc.*, No. 19-CV-01356-NJR, 2020 U.S. Dist. LEXIS 148760, *6-7 (S.D. Ill. Aug. 18, 2020) (discussing what is required to state a claim under the FMLA versus what is required to prevail upon a claim under the FMLA); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("The question presented by a motion to dismiss for insufficient pleadings does not turn on the controls placed on the discovery process."). This applies to the inverse as well. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (An opinion decided on a motion to dismiss "is of no relevance here, since it involved not a Rule 56 motion for summary judgment but a Rule 12(b) motion to dismiss on the pleadings. The latter, unlike the former, presumes that general allegations embrace those specific facts that are necessary to support the claim." (cleaned up)).

14

official policy.'" *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 879 (7th Cir. 2019) (quoting *Monell*, 436 U.S. at 694); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Thus, a plaintiff can claim that a governmental entity caused harm under § 1983 in one of three ways: (1) pursuant to "an official policy adopted by the entity's officers"; (2) "pursuant to a custom—even one that is not formally codified"; or (3) when someone "with final decision-making authority within the entity adopted the relevant policy or custom." *Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 690-91, 694). Under the latter, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability," and "whether a particular official has 'final policymaking authority' is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

Here, Marsden does not adequately allege that the College caused her harm through an express policy, custom, or practice. To the extent that she alleges College President Borowicz is directly responsible for decision-making related to the alleged First Amendment retaliation against her, she does not plausibly allege how President Borowicz had policymaking authority. The College argues that the President of a community college is not the final policy-maker because Illinois' Community Colleges Act places that final policymaking authority in the hands of a board. Dkt. 55, at 17; 110 ILCS 805/3-25.[7] In response, Marsden argues "it is a clear

---

[7] Indeed, the Community Colleges Act creates a hierarchical structure for administration, from a State Board whose Chair is appointed by the Governor down to the board of community college districts comprised of elected members. This Act gives the board

question of fact at this time as to whether the named Defendants . . . were 'persons with final policymaking authority' at the College." Dkt. 62-1, at 22. Marsden cites to *Kujawski v. Board of Comm'rs*, 183 F.3d 734 (7th Cir. 1999), a case decided at summary judgment, for the proposition that whether a Board has delegated its authority to its employees or officials is a question of fact. *See* Dkt. 62-1, at 23.[8]

Although "an individual's status as a policy-making employee frequently poses a fact question[,] . . . when the duties and responsibilities of a particular position are clearly defined by law and regulations, a court may resolve this issue without the aid of a finder of fact." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 972 (7th Cir. 2001) (employing the Court's analysis in *Pickering*). So, a complaint's factual allegation—or at least a reasonable inference drawn from the allegations—might be sufficient to withstand a motion to dismiss, but without evidence to support the allegation or inference, summary judgment will be granted. *See, e.g.*, *Carpanzano v. College of DuPage*, No. 03 C 4358, 2003 U.S. Dist. LEXIS 22004, *6 (N.D. Ill. Dec. 5, 2003) (denying a motion to dismiss when plaintiff expressly alleged that final policymaking authority had been delegated to defendants and also acknowledging that a delegation may be contrary to law); *Butler-Burns v. Bd. of Trs.*, No. 16 C 4076, 2018 U.S. Dist. LEXIS 48800, *25-26

---

authority to hire, fire, and establish policies within their respective districts. *See* 110 ILCS 805/3-21.

[8] The Court is not a Blue Book stickler. So long as the Court can quickly and easily find the cited authority, the Court's fine. But if the citation is erroneous or lacks page numbers, then judicial resources are wasted hunting for the authority. *See Betts v. ARDC*, No. 93 C 5883, 1994 U.S. Dist. LEXIS 8477, *15 n.8 (N.D. Ill. June 21, 1994) (imposing Rule 11 sanctions against an attorney for, among other things, providing citations "of no value" because they lack page numbers).

(N.D. Ill. Mar. 26, 2018) (finding, on summary judgment, that plaintiff's claim that policymaking authority was delegated to officials in that they could hire and fire was not sufficient evidence to show that they had authority to make *policy*).

In *Pembaur v. Cincinnati*, a plurality of the Court wrote that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." 475 U.S. 469, 483 (1986) ("hold[ing] that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). Therefore, although it may be a question of fact as to whether an official with policymaking authority delegated his authority, whether the delegator had policymaking authority in the first place is a question of state law.

Here, Marsden's Second Amended Complaint provides no allegations or even a reasonable inference as to who delegated what authority to whom and under what circumstances. A mere allusion of delegation made in a response brief, which was all that was done here, is not enough to plausibly allege a *Monell* claim against a municipal entity. Defendants argue that this claim should be dismissed *as to Kishwaukee College* for failure to allege liability under *Monell*, and the Court agrees.

17

Marsden's First Amendment retaliation claim brought under § 1983 against the College is dismissed without prejudice, with leave to amend consistent with Rule 11. *See* Fed. R. Civ. P. 11(c).[9]

### 3. Individual Defendants' Defense of Qualified Immunity

Qualified immunity shields state officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts consider two factors in determining qualified immunity: (1) whether a right was violated, and (2) whether that right was established at the time. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). "If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed." *Id.*

---

[9] Even if Marsden is able to file an amended complaint alleging a *Monell* claim against the College, Marsden's counsel should ask themselves why she needs that claim. In Illinois, a *Monell* claim has no practical consequences as to damages. *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988). Under Illinois law, plaintiffs who prevail will receive the amount of compensatory damages the jury determines that they are entitled to; plaintiffs do not receive more compensatory damages just because there are more defendants. Compensatory damages compensate; they don't provide a windfall. *Hillmann v. City of Chicago*, 66 F. Supp. 3d 1109, 1117 (N.D. Ill. 2014). Moreover, under Illinois law, units of local governments (such as community colleges) are required to indemnify employees for compensatory damages. 110 ILCS 805/3-30. And, under Seventh Circuit law, plaintiffs can simply add an indemnification claim in their complaint to ensure recovery of compensatory damages. *Wilson v. City of Chicago*, 120 F.3d 681, 684-85 (7th Cir. 1997). So, adding a *Monell* claim provides nothing to plaintiffs' compensatory damages. And, under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), punitive damages are unavailable against units of local government for violations of claims brought under Section 1983. So, a *Monell* claim provides nothing to plaintiffs' punitive damages. Marsden should keep all of this in mind before filing yet another amended complaint with a *Monell* claim.

A plaintiff bears the burden to establish whether a right was clearly established at the time of the violation. *Id.* at 766-67 (explaining how the analysis reviews Supreme Court decisions, Seventh Circuit decisions, and finally, other case law if necessary). And "while qualified immunity may not entitle a defendant to dismissal on the pleadings, qualified immunity may entitle the defendant to summary judgment later on." *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (acknowledging that "before discovery begins, a defendant asserting qualified immunity is entitled to dismissal if the allegations in the complaint fail to state a claim of a clearly established right having been violated[, but a]fter discovery, however, the defendant asserting qualified immunity is entitled to summary judgment if the evidence fails to demonstrate a genuine factual issue about the characteristics of the employee's position or whether the defendant committed the alleged acts").

First, Marsden alleged that President Borowicz, Dammon, and McCluskey violated her constitutional rights under the First Amendment when they retaliated against her for her speech regarding the College's alleged misuse of public funds and her FOIA requests. Defendants argue that they "are qualifiedly immune because no case has held that a First Amendment claim can be based on a FOIA request or affidavit where no speech as a citizen on a matter of public concern is alleged to be part of that FOIA request or affidavit." Dkt. 64, at 5. Defendants' response is only challenging whether the FOIA request is a constitutional violation; however, Marsden's Second Amended Complaint alleges First Amendment conduct

19

beyond the FOIA request, including speech at several campus meetings and engagement with Union activities. This Court need not determine whether a FOIA request itself is protected speech because Marsden clearly alleged other instances of protected speech in her complaint.

Next, the question is whether Defendants' "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Talequah, Okla. v. Bond*, 595 U.S. ___, ___ (2021) (slip op., at 3) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (per curiam). Defendants do not argue for dismissal based on qualified immunity because there is no clearly established right, but rather, "because the defendants did not violate plaintiff's clearly established constitutional right." Dkt. 55, at 19. Defendants argue that they were unaware of the First Amendment speech and could, therefore, not have retaliated because of it. *Id.* at 20. But causation is not part of the qualified immunity analysis. Marsden responds by claiming the facts of her case are "very analogous . . . almost verbatim" to those of *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). The Seventh Circuit has also been clear that "[a]n employee's ability to highlight the misuse of public funds or breaches of public trust is a critical weapon in the fight against government corruption and inefficiency." *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003).

At this stage of the litigation, Marsden has alleged a constitutional violation that existed at the time. That is all she needs to do. Defendants' motion to dismiss based on qualified immunity is denied.

### B. __Count II: Ethics Act (5 ILCS 430/15-10)__

Marsden brings Count II against Defendants for violation of the State
Officials and Employee Ethics Act, 5 ILCS 430 ("Ethics Act" or "Illinois Ethics Act"),
specifically its whistleblower protection section that prohibits a "State employee"
from taking retaliatory action against another state employee for activities such as
public disclosure of legal or regulatory violations, providing information for use in
investigations or hearings, or assisting others in doing so. _See_ 5 ILCS 430/5-5–40;
_Wynn v. Ill. Dep't of Human Servs._, 2017 IL App (1st) 160344, ¶ 57, 81 N.E.3d 28,
38-9 (Ill. App. Ct. 2017). Defendants move to dismiss this count because the Act
expressly excludes community colleges from the definition of "State agency," and by
reference, "State employee." Dkt. 55, at 20-21; 5 ILCS 430/1-5. Marsden argues that
"this is simply not true." Dkt. 62-1, at 27.

Under the whistleblower protection provision of the State Officials and
Employees Ethics Act, certain activities are protected. But critical to this case are
two questions: (1) are any of the defendants "[a]n officer, a member, a State
employee, or a State agency"; and (2) is Marsden "a State employee"? The statute
only allows a claim against those specific defendants by "a State employee". 5 ILCS
430/15-10. The statute defines "State employee" as "any employee of a State
agency." 5 ILCS 430/1-5. And "State agency" is defined to include a cornucopia of
entities. _Id._ But the definition specifically carves out community colleges and
community college employees in two distinct ways. First, included within the
definition of "State agency" are "institutions of higher learning as defined in Section

21

2 of the Higher Education Cooperation Act (*except community college districts*)"
(emphasis added). Section 2 of the Higher Education Cooperation Act includes in
the definition of "public institutions of higher education" "the public community
colleges of this State." 110 ILCS 220/2. So, the exclusion of community colleges is
obvious.

Second, as if to wear a belt and suspenders, the Illinois General Assembly
included another carve-out for community colleges. Sometimes, Illinois community
colleges are considered units of local government. *See Am. Ctr. For Excellence in
Surgical Assisting, Inc. v. Cmty. College Dist. 502*, 315 F. Supp. 3d 1049, 1054 (N.D.
Ill. 2018) (*citing Bd. of Trs. of Cmty. Coll. Dist. No. 502 v. Dep't of Prof'l Regulation*,
842 N.E.2d 1255, 1266 (Ill. App. Ct. 2006)); *see also Luciano v. Waubonsee Cmty.
Coll.*, 614 N.E.2d 904, 908 (Ill. App. Ct. 1993). The statute includes the following in
the definition of "State agency": "administrative units or corporate outgrowths of
the State government which are created by or pursuant to statute, *other than units
of local government (including community college districts)*. 5 ILCS 430/1-5
(emphasis added). So, in the same definition of "State agency", the Illinois General
Assembly again excluded community colleges so as to remove all doubt, even when
community colleges are considered units of local government.

Because the College and the individual defendants are not a "State agency",
and Mardsen is not a "State employee", the statute does not apply. Simply put, the
whistleblower protection in § 15-10 does not protect employees of community

22

colleges. The Court agrees with Defendants and dismisses Count II with prejudice.[10]

## C. **Counts III & IV: Defamation and False Light Invasion of Privacy**

Marsden alleges that Defendants defamed her and violated her privacy by placing her in a false light to the College community when they claimed that Marsden wrote and sent the anonymous threatening letter and published the letter sent to Marsden at the conclusion of the internal investigation. Dkt. 49, ¶¶ 78-95.

Defendants move to dismiss these counts based on absolute privilege and immunity. Defendants' argument is based, in part, on the protection given to statements made in furtherance of a criminal investigation. *Morris v. Harvey Cycle and Camper, Inc.* 911 N.E.2d 1049, 1054 (Ill. App. Ct. 2009) ("Defamatory statements that would otherwise be actionable will escape liability when the conduct is to further an interest of social importance such as the investigation of an alleged crime.") (citing W. Prosser, Torts §114 (4th ed. 1971)). Indeed, it is important that all citizens be free to report suspected crimes without fear of civil

---

[10] Rule 8 does not require plaintiffs to plead legal theories and this Court will not dismiss a claim under 12(b)(6) for citing the wrong statutory section. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (citing cases). However, regardless of which of the three possible statutes she may be relying upon, she has no claim. First, Marsden expressly brings Count II under the Illinois Ethics Act. *See* Dkt. 49, ¶¶ 73-77. But referring to her claim as being under the "Ethics Act" is a misnomer. The "Illinois Governmental Ethics Act" applies to legislators. *See* 5 ILCS 420/2-101 *et seq*. So, Mardsen has no claim under this statute. Second, in her response brief, she addresses the State Officials and Employees Ethics Act. Dkt. 62-1, at 26-27. As shown, there is no claim under this statute. Third, Mardsen does not allege or argue Illinois' statute specifically relating to local government employees, to the extent a community college employee is a "local government employee." Perhaps, that decision was intentional because she has no claim under that statute as well. *See* 50 ILCS 105/4.1 (requiring, among other things, a written report to an appropriate auditing official within 60 days of the retaliatory action).

liability. However, Marsden alleges that "on or about June 17, 2019, the anonymous letter was determined not to be a criminal matter or constitute harassment by Campus Officer Eklund and the case was closed." Dkt. 49, ¶ 20. She also alleges that Defendants' defamatory conduct occurred June 20, 2019, when President Borowicz told the College community that Marsden sent the anonymous letter, through August 6, 2019, when McCluskey published the letter mailed to Marsden. *Id.* ¶¶ 18, 47. According to Marsden's timeline, she had been cleared of potential criminal charges regarding the threatening letter before Defendants made the allegedly defamatory statements. Therefore, it is unclear whether Defendants' conduct was privileged for reporting of a suspected crime.

Alternatively, Defendants argue that College administrators have absolute immunity as public officials. Under Illinois law, a "local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." *Horowitz v. Board of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617 (7th Cir. 2001) (quoting 745 ILCS 10/2-107). Further, "[a] public school [official] is absolutely immune from liability for defamation if the statements were made while acting within the scope of his official duties." *Marchioni v. Bd. of Educ. of City of Chicago*, 03-cv-0104, 2003 U.S. Dist. LEXIS 10431, *6 (N.D. Ill. Jun. 18, 2003). This privilege applies when the public officials are acting within the scope of their employment. At this stage of the pleadings, without a more fully developed record—and given the alleged facts and

24

timeline—it is unclear whether Defendants' conduct was within the scope of their duties, and dismissal of these claims on immunity is premature.

As to the allegations themselves, defamatory statements "tend[] to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992) (citing Restatement (Second) of Torts § 559 (1977)). To succeed on a claim of defamation, a plaintiff "must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Allegations of defamation and privacy torts fall within the Rule 8 pleading standards, which do not require plaintiffs to "recite verbatim the allegedly defamatory statement." *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015).

Here, as to McCluskey's August 6, 2019 publication of a letter to Marsden, there does not appear to be any false statements in the letter itself. Marsden alleges that this letter accused her of "violating professional policies," "falsely claimed that [she] failed to adhere to general standards of professionalism," "falsely claimed that [her] misconduct subjected her to discipline," and "falsely claim[ed] that [Marsden] threatened the College President and of sending [sic] a threatening letter to her." Dkt. 49, ¶ 79. This is not so. The letter, attached to the complaint as Exhibit B, acknowledges that there was an investigation into her "alleged sending of an

anonymous threatening letter" and continues to explain that "there is not sufficient evidence to show that [Marsden] engaged in the alleged conduct or violated any College policy." Dkt. 49-2. Further, Marsden's allegations that the letter falsely claimed she violated various policies is simply untrue. The letter states, "As a reminder, College employees are expected to comply with all College policies . . . Failure to comply with these policies . . . will subject an employee to discipline, up to an including termination." *Id.* These statements concerning the College's policies are neither accusatory nor directed at Marsden's conduct. In fact, the letter cleared Marsden of any such conduct. Though Marsden alleges that this letter "falsely" claimed she violated these policies and accused her of this conduct, the plain text of the letter refutes that allegation. So, there is no false statement in the letter, and Count III as to McCluskey is dismissed with prejudice.

As to Borowicz, Marsden has adequately pleaded a claim of defamation when she alleged that on June 20, 2019, President Borowicz told the College community that Marsden sent the anonymous threatening letter, which causing injuries to her reputation. Dkt. 49, ¶¶ 78-89. Defendants' motion to dismiss Count III as to Defendant Borowicz is denied. Marsden does not make specific defamation allegations as to Dammon and the College, and even a liberal reading of the complaint does not establish these allegations. Therefore, Count III is dismissed with prejudice as to Dammon and the College.

To state a claim of "invasion of privacy in the form of publicity placing another in a false light," a plaintiff must show that:

26

(1) plaintiff was "placed in a false light before the public as a result of
    defendants' actions";
(2) that false light "would be highly offensive to a reasonable person"; and
(3) defendants acted "with knowledge that the statements were false or with
    reckless disregard for whether the statements were true or false."

*Kolegas*, 607 N.E.2d at 209-10 (citing *Lovgren v. Citizens First Nat'l Bank*, 534

N.E.2d 987, 990-91 (Ill. 1989)). False light invasion of privacy depends "upon the

false impression created by defendant's statements." *Lanigan v. Resolution Tr.*, No.

91-cv-7216, 1994 U.S. Dist. LEXIS 158, *15 (N.D. Ill. Jan. 7, 1994).

Here, Marsden alleges that the same conduct (that of Borowicz's and

McCluskey's) placed her in a false light to the public College community, that it was

"highly offensive or embarrassing to a reasonable person of ordinary sensibilities,"

and that "Defendants acted with actual malice where it [sic] knew that the

statements were false or made then [sic] with utter and reckless disregard as to the

statements' truth," causing her continued injuries to her reputation. Dkt. 49, ¶¶ 90-

95. Taking these allegations as true and drawing all reasonable inferences in favor

of Marsden, she adequately states a claim for false light invasion of privacy as to

Borowicz. The allegations are not as straightforward as to McCluskey because the

statements published in the letter are decidedly not false. However, a trier of fact

could be convinced that McCluskey's statements gave a "false impression" and that

McCluskey acted with reckless disregard. Whether discovery will reveal otherwise

is not for the Court to decide at this juncture. Defendants' motion to dismiss Count

IV as to Borowicz and McCluskey is denied. As with Count III, Marsden has failed

to make specific allegations as to Dammon and the College, so Count IV is

dismissed with prejudice as to them.

### D. **Counts V & VI: Emotional Distress**

Marsden alleges that Defendants both intentionally and negligently inflicted emotional distress. Defendants move to dismiss Count V for failure to state a claim because the conduct fails to rise to the extreme level required by law, and Count VI because Marsden cannot satisfy Illinois' "impact rule."

In Illinois, to establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that defendants' conduct was extreme and outrageous, that defendants intended to inflict severe emotional harm or knew that the harm was highly likely to result, and that harm did, in fact, result from the conduct. *Motley v. United Airlines, Inc.*, 2017 U.S. Dist. LEXIS 32619, *10 (N.D. Ill. Mar. 8, 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79-80 (Ill. 2003)). The level of severity necessary to establish a claim for intentional infliction of emotion distress is extreme, such that no reasonable person should be expected to endure it. *Hang Cui v. Kubycheck*, 2021 IL App. (2d) 200239-U, ¶ 29. To be considered extreme and outrageous, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83. Furthermore, sufficiently pleaded complaints often involve "a defendant who stood in a position of power or authority relative to the plaintiff." *Id.* at 83; *see also Motley*, 2017 U.S. Dist. LEXIS 32619, *10.

Here, Marsden alleges that Defendants' conduct caused her "to suffer fright, grief, worry, shame, humiliation" and that her "psychological well-being" was

affected by the "false criminal charges and unlawful investigation." Dkt. 49, ¶ 100. She further alleges that their conduct "created an intimidating, hostile, and offensive work environment, which unreasonably interfered with [her] work performance." *Id.* While these adjectives certainly paint a picture of severe emotional harm, Marsden has alleged no facts to suggest that Defendants' conduct would be "intolerable in a civilized community" or such that "no reasonable person should be expected to endure it." It is reasonable that Defendants would investigate an anonymous threatening letter being sent to the home address of College President Borowicz, and although the investigation eventually cleared Marsden of wrongdoing, Defendants' alleged conduct falls short of extreme and outrageous conduct. Count V is dismissed with prejudice.

To state a claim for negligent infliction of emotional distress ("NIED") in Illinois, a plaintiff "must allege the traditional elements of negligence: duty, breach, causation, and damages" in addition to extreme and outrageous conduct. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58 (Ill. 2016). "A direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact." *Id.* at 59; *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (noting that a direct victim of alleged NIED in Illinois must satisfy the impact rule).

Here, Marsden argues that she is a direct victim who sustained "physical impact by the humiliation of being paraded around the campus by officers on several occasions in front of staff and students." Dkt. 62-1, at 30. She also alleges

that she "suffered from severe physical illness as a proximate result of Defendant's [sic] actions." Dkt. 49, ¶ 109. The allegation that she suffered from severe physical illness is inadequate to show physical harm. Marsden appears to be conflating the bystander "zone of danger" analysis with the direct victim "impact rule" analysis for claims of NIED. A bystander traditionally needs to show a physical manifestation of the emotional distress to recover. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶¶ 77-80. But a direct victim need show some physical impact that precipitated or was contemporaneous with the emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 38, 77 N.E.3d 50, 59 (Ill. 2016). Even if physical injury or impact was sufficiently pleaded, Marsden's allegations still fail to state any extreme or outrageous conduct giving rise to this claim. Therefore, Count VI is dismissed with prejudice.

### E.  Count VII: False Imprisonment

Marsden alleges she was falsely imprisoned by "Defendant" on more than one occasion, though the facts only suggest this conduct occurred in the sheriff's campus office. *See* Dkt. 49, ¶¶ 27, 113-15. Defendants move to dismiss for failure to state a claim and because the facts suggest she voluntarily submitted to the questioning inside the office.

The tort of false imprisonment is "an unlawful restraint of an individual's personal liberty or freedom of locomotion." *Pechulis v. City of Chicago*, No. 96-cv-2853, 1997 U.S. Dist. LEXIS 11856, *9 (N.D. Ill. Aug. 7, 1997). In Illinois, false imprisonment requires "actual or legal intent to restrain . . . which may be effected

by words alone, by acts alone or both." *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. App. Ct. 1984). The confinement must be against an individual's will; voluntary consent to confinement defeats the claim. *Id.* at 1312 (adopting the approach of the Restatement (Second) of Torts § 38-41, wherein yielding to asserted legal authority can establish confinement against one's will).

Here, Marsden uses group pleadings so that the Court cannot determine which defendant (if any) is accused of false imprisonment, whether the defendant acted with intent to confine or asserted legal authority, or whether Marsden was actually confined to a physical space (i.e., by a locked door). In fact, Marsden's allegations reasonably imply that either DeKalb County Sheriff's Deputy Johnson or Detective Holiday, neither of whom are parties to this lawsuit, is the actor in this context. *See* Dkt. 49, ¶¶ 25-33. And that is the reasonable inference the Court draws from those allegations. In response to the motion to dismiss, Marsden argues that she "was restrained by the Dekalb Sheriff" and that this was done "at the behest of Borowicz and Dammon." Dkt. 62-1, at 30. But this is not enough to plausibly allege that the individual defendants intended to confine her against her will and did so through the DeKalb Sheriff. Although a plaintiff need not plead facts to support each element, plaintiff must give defendants fair notice of the nature of the claim against them. *See Twombly*, 550 U.S. at 555. Count VII is dismissed without prejudice, with leave to amend.

### F. **Count VIII: Willful Misrepresentation (745 ILCS 10/2-210)**

Finally, Marsden alleges "willful misrepresentation of the provision of false information in violation of 745 ILCS 10/2-210." Dkt. 49, ¶¶ 118-130. Defendants move to dismiss for failure to state a claim because the cited statute is an exception to the Tort Immunity Act, not itself a claim. The Court agrees. Count VIII is dismissed with prejudice.

## III. Conclusion

For the reasons outlined above, Defendants' motion to dismiss is granted in part and denied in part, as follows:

**Count I.** Granted without prejudice as to the College; denied as to Borowicz, McCluskey, and Dammon.

**Count II.** Granted with prejudice as to all Defendants.

**Count III.** Denied as to Borowicz; granted with prejudice as to McCluskey, the College, and Dammon.

**Count IV.** Denied as to Borowicz and McCluskey; granted with prejudice as to the College and Dammon.

**Count V.** Granted with prejudice as to all Defendants.

**Count VI.** Granted with prejudice as to all Defendants.

**Count VII.** Granted without prejudice as to all Defendants.

**Count VIII.** Granted with prejudice as to all Defendants.

Mardsen is given until December 3, 2021, to file an amended complaint. Mardsen and her counsel should give considerable thought as to whether filing yet another amended complaint is a worthwhile endeavor or even appropriate under Rule 11. Regardless of whether an amended complaint is filed by that date, Defendants are

ordered to file an answer, along with any affirmative defenses, by December 20, 2021; thereafter, they can file a motion for judgment on the pleadings as to any claims they think should be dismissed. Defendants and their counsel should likewise give considerable thought as to whether a Rule 12(c) motion is a worthwhile endeavor as they can always file a motion for summary judgment later, as they will undoubtably want to do as to the claims that are not dismissed. Additionally, all parties are to discuss with Magistrate Judge Jensen whether a settlement conference would be useful at this time.

Date: November 17, 2021

Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division